IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:23-CR-153 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| DAHABA BAHARI LULA, | ) | MEMORANDUM |
| also known as, "Haba," | ) | |
| | ) | |
| Defendant. | ) | |

# Table of Contents

INTRODUCTION ............................................................................................. 2

FACTUAL OBJECTIONS & ADVISORY GUIDELINES RANGE ............................ 2

   1. *Factual objections* ............................................................................... 3

   2. *Drug quantity* ..................................................................................... 3

   3. *A two-level firearm enhancement applies* .......................................... 6

   4. *Defendant maintained a drug premises* ............................................ 8

   5. *Defendant used or attempted to use a minor* ................................... 11

   6. *Acceptance of responsibility* ............................................................. 12

THE § 3553(a) FACTORS SUPPORT A 240-MONTH SENTENCE ...................... 13

CONCLUSION ............................................................................................... 16

**INTRODUCTION**

The OMB criminal street gang engaged in a years-long campaign to deal drugs, commit shootings, illegally possess and purchase firearms, and commit armed robberies.  Defendant's conduct ensured OMB's continued survival through the distribution of drugs and acquisition of drug proceeds.  Because of Defendant, over 22 kilograms of the incredibly dangerous drug fentanyl were injected into our community.  The Court should impose a 240-month sentence.

**FACTUAL OBJECTIONS & ADVISORY GUIDELINES RANGE**

The government agrees with the guideline range contained in the PSR, which is as follows:

| | |
|---|---|
| Base Offense Level (§2D1.1(a)(5), (c)(2)) | 36 |
| Firearm (§2D1.1(b)(1)) | +2 |
| Premises (§2D1.1(b)(12)) | +2 |
| Use of a minor (§3B1.4) | +2 |
| Acceptance of responsibility (§3E1.1) | 0[1] |
| Total offense level | 42 |
| | |
| Criminal history: | I |
| | |
| Guideline range: | 360 months to life |

Defendant has multiple unresolved factual and guidelines objections to the PSR.  Each of the outstanding objections are addressed below.  Further, at sentencing, the government anticipates calling a law enforcement witness to testify about the disputed guideline issues.

---

[1] As further outlined below, the government reserves the right to argue Defendant should not receive acceptance of responsibility, should she maintain factual objections to the PSR.  *See* USSG §3E1.1, comment. (n.1(A)).

1. *Factual objections*

In her filed objections, Defendant appeared to be objecting to much of the factual information contained in the offense conduct section of the PSR. *See* Dkt. No. 251. However, subsequent to the filing of these objections, the undersigned spoke with defense counsel via telephone. During that conversation, counsel advised the government that Defendant's objections were not factual in nature and, instead, were legal objections to the various guideline provisions. Defense counsel further confirmed that Defendant did not have any factual objections to the information contained in the offense conduct section of the PSR. Relying on this, the government is not submitting exhibits in support of the factual information contained in the PSR. However, should Defendant persist in these factual objections, as noted below, the government reserves the right to argue that Defendant shouldn't receive a reduction for acceptance of responsibility.

2. *Drug quantity*

Defendant argues she should be attributed only the drugs that she personally distributed and are contained in the plea agreement, which she states equals a base offense level 34. As outlined below, Defendant is appropriately attributed a base offense level 36.

Defendant pled guilty to both a Racketeering Conspiracy and Conspiracy to Distribute 400 Grams or More of Fentanyl. In her plea agreement, Defendant specifically admitted that the racketeering acts she conspired to commit with OMB involved "the felonious buying, selling, and otherwise dealing in controlled

substances, in violation of Title 21, United States Code, Sections 841 and 846" and that she personally committed such acts. Dkt. No. 175 ¶ 7(f). Further, Defendant agreed that the agreement or understanding to distribute fentanyl involved *at least* 400 grams of fentanyl. *Id.* at ¶ 7(g). There was no cap on the fentanyl quantity attributable to Defendant. *See generally* Dkt. No. 175.

It is a basic rule of federal sentencing that relevant conduct is generally more expansive than the defendant's personally undertaken activity. USSG §1B1.3(a)(1)(B). This is especially true in drug cases, which are jointly undertaken criminal activity. *Id.* The concept of expanded relevant conduct in jointly undertaken criminal activity specifically includes all acts and omission of others that were "within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity" regardless of whether the case was charged as a conspiracy. *Id.* Additionally, it includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG §1B1.3(a)(2); *United States v. Campbell-Martin*, 17 F.4th 807, 818 (8th Cir. 2021); *United States v. Anderson*, 243 F.3d 478, 485 (8th Cir. 2001) (in determining whether something is relevant conduct, the court should consider the "similarity, regularity, and temporal proximity" of the conduct); *United States v. Harris*, 36 F.4th 827, 830 (8th Cir. 2022) (noting that when the amount of drugs seized "does not reflect the scale of the offense" the district court "shall approximate the quantity of the controlled substance" and may do so by "imprecise evidence, so long as the record reflects a basis for the court's

decision") (internal citations and quotation marks omitted); *United States v. Thomas*, 760 F.3d 879, 888 (8th Cir. 2014) ("The base offense level for drug offenses under the Guidelines is based upon drug quantity, which may include types and quantities of drugs not specified in the count of conviction if they are relevant conduct.") (internal citation omitted)).

Here, the unobjected to information in the PSR outlines that Defendant's participation in the drug trafficking activities included her personal, frequent distribution of M30 fentanyl pills, her travel to other states to acquire bulk quantities of M30 fentanyl pills from sources, her retrieval of drugs and guns from the stash house, and Defendant's use of other to assist in the drug trafficking operation. The drug quantity attribution is based on the group's acquisition of 15,000 M30 fentanyl pills per trip from their Minnesota source. Although the group acquired 15,000 pills every month or month and a half from this source, the probation office erred on the caution, and attributed Defendant the lower end of that quantity, attributing 15,000 fentanyl pills to Defendant only every six weeks (from November 1, 2021, to July 20, 2023).

This quantity was not only within the scope of the jointly undertaken criminal activity of the OMB group, but Defendant actually participated in the acquisition, storage, and distribution of these pills. Thus, it was reasonably (and actually) foreseeable to her. Defendant is not simply being attributed the conduct of others based on relevant conduct principles (which would be perfectly acceptable), but is being attributed drug quantity based on her own personal conduct. Under the

guidelines and the Eighth Circuit case law, Defendant is thus responsible for the drug quantity outlined in the PSR, for a base offense level of 36, under either relevant conduct principles or personal activity. The Court should overrule Defendant's objection.

### 3. *A two-level firearm enhancement applies*

A two-level enhancement applies, pursuant to USSG §2D1.1(b)(1), "[i]f a dangerous weapon (including a firearm) was possessed." USSG §2D1.1(b)(1). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. (n.11(A)). Actual or constructive possession is sufficient to satisfy the guideline. *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010). A loaded gun in a location where drugs were located, including in a stash house, justifies the application of the enhancement. *United States v. Renteria-Saldana*, 755 F.3d 856, 859 (8th Cir. 2014) (finding a loaded handgun located in a stash house with the drugs that were delivered to defendant for resale justified the two-level enhancement). The defendant need not personally use the firearm in order for the enhancement to apply. *Id.*

"[T]he presence of a firearm in a location where it could be used to protect drugs can be sufficient evidence to provide the requisite connection." *United States v. Warford*, 439 F.3d 836, 844 (8th Cir. 2006) (citing *United States v. Burke*, 91 F.3d 1052, 1053 (8th Cir. 1996)). The nexus between the gun and the drug offense can be established by a temporal and spatial relationship between the defendants, the criminal activity, and the gun. *United States v. Young*, 689 F.3d 941, 946 (8th Cir.

2012).   The government can meet its burden by proving, by a preponderance of the evidence, "that the firearm was found in the same location where drugs or drug paraphernalia were located or where part of the conspiracy took place." *United States v. Atkins*, 250 F.3d 1203, 1214 (8th Cir. 2001).   "The enhancement poses a very low bar for the government to hurdle."  *Anderson*, 618 F.3d at 881. (internal quotation marks and citation omitted).

Here, it is not clearly improbable that the gun found during the search warrant at Defendant's residence was connected with the drug trafficking offense.   The unobjected to information in the PSR shows that Defendant picked the gun up from the drug stash house, and then transported it to the home she shared with Gates. When law enforcement executed a search warrant at that residence, they located the loaded gun in the home, next to the same type of drugs that were being distributed. As further outlined below, Defendant and Gates were using both their shared residence and the stash house from which to conduct the drug conspiracy. Defendant and her co-conspirators were storing drugs and guns together, both at the stash house and Gates and Defendant's residence, and the "well-known tendency of drug criminals to use firearms in connection with their drug activities supports an inference that a gun at a location near the drug activity was somehow connected to it." *Anderson*, 618 F.3d at 881.  The gun was connected to drug trafficking at two separate locations at which Defendant conducted her drug operation, and the enhancement applies.   The Court should apply the enhancement and overrule Defendant's objection.

4. *Defendant maintained a drug premises*

Defendant next objects to the application of a two-level enhancement, pursuant to USSG §2D1.1(b)(12). USSG §2D1.1(b)(12) directs that "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." USSG §2D1.1(b)(12). Application note 17 further clarifies that this includes "storage of a controlled substance for the purpose of distribution." USSG §2D1.1, comment. (n.17). Factors for the district court's consideration include "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." *Id.* The application note further directs that although distributing a controlled substance does not have to be the "sole purpose for which the premises was maintained," it "must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.* The court should weigh the frequency of the use for distribution of drugs against the frequency of use for lawful purposes. *Id.*

The Eighth Circuit has interpreted the provisions of this enhancement to apply even when the premises was primarily a family home if the defendant also uses the home for the purpose of substantial drug trafficking activities. *United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012). This includes storing drugs and drug trafficking related materials in the premises. In *United States v. Hernandez Lopez*, 24 F.4th 1205 (8th Cir. 2022), the Circuit found the enhancement applied where officers found distribution-level quantities of methamphetamine and a scale in the

basement of a home where the defendant lived with his significant other and her children, even though there was no evidence of actual distribution occurring in that basement. *See also United States v. Rios*, 2023 WL 2544233 *at 1 (8th Cir. Mar. 17, 2023) (finding the enhancement applied where Rios stored 60 pounds of marijuana in a room in his residence that he called "his office") (per curiam and unpublished); *United States v. Owens*, 2023 WL 2127334 (8th Cir. Feb. 21, 2023) (finding the enhancement applied when a search of Owens's duplex revealed methamphetamine, scales, and cutting agents) (per curiam and unpublished).

Similarly, the Eighth Circuit has also found that using a stash house for storage of drugs and other items used in drug trafficking also qualifies, even if Defendant does not have a possessory interest in the location. To determine whether a defendant maintained the premises, "the court should consider whether the defendant had a possessory interest in the premises and the extent to which the defendant controlled access to, or activities at, the premises." *Renteria-Saldana*, 755 F.3d at 859 (citing USSG §2D1.1, comment. n.17). However, holding title to the premises, having the property rented in your name, or paying utilities at the premises are not required within the meaning of maintain. *United States v. Anwar*, 880 F.3d 958, 971 (8th Cir. 2018); *United States v. Garcia*, 774 F.3d 472, 475 (8th Cir. 2014) (per curiam). For example, in *United States v. Anwar*, the Eighth Circuit upheld the application of the enhancement where the defendant utilized a mobile wireless store to store and distribute controlled substances, even though someone else technically owned/managed the store. 880 F.3d 958, 971-72 (8th Cir. 2018). The Eighth Circuit

found the key factor is whether the location is used "for the purpose of substantial drug-trafficking activities." *Anwar*, 880 F.3d at 972 (citing *United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012) (enhancement "applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises" also served other, legitimate, functions)); *see also Renteria-Saldana*, 755 F.3d at 859-60 (finding appropriate application of the enhancement where defendant used a home as a stash house that did not live at, as defendant regularly picked up drugs from the house and brought proceeds to the house for retrieval by other conspirators).

Here, the enhancement applies for two, separate reasons. First, Defendant utilized the residence she shared with Gates as a location from which to conduct drug activity. As noted in the PSR (¶ 50), at the time the search warrant was executed at their shared residence, offices located M30 fentanyl pills and a loaded Glock pistol— both tools of their drug trade. Further, testimony at the hearing will establish that prior to several of the controlled drug purchases, Defendant was observed retrieving drugs from that same residence before selling them to undercover agents. This conduct, by itself, clearly qualifies for the enhancement under Eighth Circuit precedent.

Further, Defendant and her co-conspirators also used a stash house to store bulk quantities of drugs, as well as firearms and cash. As outlined in the PSR, once large quantities of M30 fentanyl pills were received from the conspiracy's source, they were stored at one of the enterprise member's residences. When the drugs were ready

to be divided up amongst the OMB members, Gates and/or Defendant would retrieve them from the stash house and distribute them to customers. OMB, including Defendant, also utilized this same stash house to store other tools of the drug trade, including firearms and cash. While Defendant did not live at this house, hold title to it, or pay utilities there, her sole purpose of association with this residence was "for the purpose of substantial drug-trafficking activities." This, separately, qualifies for the enhancement under Eighth Circuit law.

Based on the above, the Court should overrule Defendant's objection and apply the two-level enhancement.

5. *Defendant used or attempted to use a minor*

Pursuant to USSG §3B1.4, a two-level increase applies "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense. . . ." USSG §3B1.4. Application note 1 further explains that "used or attempted to use" "includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG §3B1.4, comment. (n.1).

Here, the unobjected to information in the PSR reflects that Defendant was utilizing C.J., a minor less than 18 years of age, to assist Defendant with the distribution of fentanyl. (PSR ¶ 29.) Further, testimony at the sentencing hearing will establish that Defendant used C.J. to distribute drugs for her (either together or individually) on other occasions. Based on this, the enhancement legally applies. However, as further outlined in the § 3553(a) sentencing recommendation section

below, the government believes there are factors warranting a downward variance in part based on the applicability of this enhancement.

6. *Acceptance of responsibility*

Should Defendant maintain factual objections at sentencing, the government will request she not receive a reduction for acceptance of responsibility. However, as noted above, defense counsel previously indicated that the pending objections were legal/guideline-related in nature, and were not factual disputes.

It is Defendant's burden to prove she is entitled to a reduction for acceptance of responsibility. *United States v. Davis*, 875 F.3d 869, 875 (8th Cir. 2017) (citing USSG §3E1.1(a)). USSG §3E1.1 notes that a defendant who "clearly demonstrates acceptance of responsibility for his offense" may be entitled to a reduction in the applicable offense level. USSG §3E1.1(a). "In determining whether a defendant qualifies under subsection (a)," there are several factors listed in the guidelines for the Court to consider. Specifically, the Court should consider whether Defendant has truthfully admitted, or not falsely denied, both the conduct underlying the offense of conviction, as well as any additional relevant conduct. USSG §3E1.1, comment. (n.1(A)); *see also United States v. Erhart*, 415 F.3d 965, 971 (8th Cir. 2005) (noting the defendant "must accept responsibility for *all* of the conduct that is part of his conviction" and "may not minimize conduct or partially accept responsibility") (emphasis in original). "[A] defendant who enters a guilty plea is not entitled to credit for acceptance of responsibility as a matter of right." *United States v. Torres-Rivas*, 825 F.3d 483, 486 (8th Cir. 2016). Although it constitutes "significant evidence in

favor" of application of the reduction, a guilty plea "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *United States v. William*, 681 F.3d 936, 939 (8th Cir. 2012) (internal citations and quotations omitted).

Here, should Defendant maintain her factual objections, which are clearly relevant conduct, she would be demonstrating a lack of acceptance of responsibility. All of this information is squarely supported by the evidence in this case, and Defendant's objections to the contrary are frivolous. The Court should withhold a reduction for acceptance of responsibility if these objections are maintained.

### THE § 3553(a) FACTORS SUPPORT A 240-MONTH SENTENCE

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1.  the nature and circumstances of the offense and history and characteristics of the defendant;
2.  the need for the sentence imposed –
    A.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B.  to afford adequate deterrence to criminal conduct;
    C.  to protect the public from further crimes of the defendant; and
    D.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3.  the kinds of sentences available;
4.  the guideline sentencing range;
5.  any pertinent policy statement;
6.  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7.  the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).  For the reasons that follow, the § 3553(a) factors support a 240-month sentence, which represents a downward variance from the guideline range.

Defendant's crimes are unquestionably serious.  She not only acquired, stored, and distributed a staggering quantity of the dangerous drug fentanyl, but she did so in support of a violent criminal street gang.  The proceeds the gang earned from selling the kilograms of these drugs ensured they had funds available to buy more drugs and acquire guns they used in violent acts.  That conduct, alone, is aggravating.

Adding to this, however, is that Defendant also assisted the gang with their firearms activity.  She transported guns for the gang to/from the drug stash house, and Defendant also stored at least one gun in the home she shared with Gates.  The mixing of guns and drugs is a dangerous combination in ordinary situations.  But, it becomes even more dangerous when those guns are injected into a violent criminal street gang.

Even given all of this, the government is recommending a downward variance to 240 months' imprisonment.  This downward variance is recommended for several reasons.  First, the government believes that while the use of a minor enhancement is legally applicable, the unique facts of Defendant's case paint a more complete picture.  When Defendant was using a minor to assist her with the commission of her drug-related crimes, Defendant herself was only 18.  Thus, due to her own age, the peers she would likely recruit into the illegal drug trade would almost necessarily be around her same age.  While this in no way excuses Defendant's behavior in

recruiting young people to commit deplorable acts, the enhancement does somewhat overstate the activity here.

Second, the government believes that while Defendant does not qualify for a role reduction for a variety of reasons, her initial involvement in the offense seemed to be largely driven by her relationship with Gates. Defendant received instructions and guidance from Gates, at least in the beginning, about the drug distribution she committed. However, as time went on, Defendant began operating at least somewhat independently from Gates, running the drug operation with little direction and guidance, and recruiting her own co-conspirators. It is clear that Gates got Defendant involved in the drug trafficking activities of OMB, but it is also clear that Defendant whole-heartedly committed to those activities and began operating with little direction.

Further, what gives the government pause about this relationship with Gates in particular is that Defendant appears to show no desire to terminate it. Communication intercepted by the Polk County Jail staff shows several attempts by Defendant and Gates to communicate with one another, even while incarcerated and facing federal charges. In that communication, they profess their intention to continue their relationship after being released from prison. Given one of the driving factors for Defendant's criminal behavior seems to be Gates's influence, Defendant's persistent desire to maintain that relationship is cause for concern about Defendant's recidivism risk.

Finally, the government believes a downward variance to 240 months is necessary to avoid unwarranted sentencing disparities with co-conspirators.

The unique characteristics of this case warrant a downward variance to 240 months' imprisonment. However, due to the aggravating nature of the crime, any further downward variance would not be warranted in this case.

## CONCLUSION

The government requests the Court impose a 240-month sentence.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By:  */s/ Kristin M. Herrera*
       Kristin M. Herrera
       Assistant United States Attorney
       210 Walnut Street, Suite 455
       Des Moines, Iowa 50309
       Tel: (515) 473-9300
       Fax: (515) 473-9292
       Email: kristin.herrera@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2024, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

_X_ ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY
By:  */s/ Kristin M. Herrera, AUSA*